United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEVIN SMITH,

          Plaintiff,

    v.

SAFEWAY, INC.,

          Defendant.

Case No. 24-cv-07918-AMO

**ORDER DENYING MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Re: Dkt. No. 40

This is a putative false advertising class action. Before the Court is Defendant Safeway, Inc.'s motion to dismiss Plaintiff Kevin Smith's second amended complaint. Having read the parties' papers and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, and good cause appearing, the Court **DENIES** the motion for the following reasons.

## BACKGROUND[1]

Safeway markets, labels, advertises, and sells its avocado oil (the "Product") under the label "Signature Select." Second Amended Complaint, Dkt. No. 38 ¶ 1 ("SAC"). The Product's packaging prominently represents that it is "100% Avocado Oil" (the "Representation"). *Id.* ¶ 2. In August 2024, Smith purchased a bottle of the Product in Oakland, California. *Id.* ¶ 10. Smith

---

[1] These facts are drawn from the allegations in Smith's complaint, which the Court accepts as true and construes in the light most favorable to Smith. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004). The facts are also drawn from documents which Smith incorporated by reference into his complaint, namely a 2024 Washington Post article and a 2023 UC Davis study, discussed further below. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (the incorporation by reference doctrine is "a judicially created doctrine that treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."); *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (The court "may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6).").

saw and relied on the Representation in making his purchase. *Id.*

Smith contends that the Product is "not only avocado oil and [is] adulterated with other oils." *Id.* ¶ 4. Smith's theory is based on (1) a Washington Post article which summarizes two studies performed by the University of California at Davis ("UC Davis"), (2) independent laboratory testing commissioned by Smith's counsel and (3) testimony of a food scientist analyzing the independent laboratory testing. *See generally id.*

On August 27, 2024, the Washington Post published an article titled "Why your avocado oil may be fake and contain other cheap oils." SAC ¶ 56, n. 1. The article cited a 2023 UC Davis study (the "Study"), which found that nearly two-thirds of 36 bottles of avocado oil tested did not meet proposed purity standards for avocado oil. *Id.* ¶ 59; Dkt. No. 24-3 at 4. The researchers reached this conclusion by testing the fatty acid profiles of each bottle.[2] Dkt. No. 24-3 at 4. The Washington Post article stated that the Product "[f]ailed both fatty acid and sterol tests." Dkt. No. 24-4 at 10. The Study acknowledged that "how much natural variables such as cultivars, harvest time, and geographic origins may affect fatty acids in pure avocado oil is still not completely understood." Dkt. No. 24-3 at 4. Thus, the Study concluded that certain elevated fatty acids could be "caused solely by economically motivated adulteration," but that "it has not been investigated if the refining process could be causing this phenomenon," and "continued research is needed." *Id.* at 4.

In October 2024, Smith's counsel purchased the Product from a Safeway in Oakland, California, and commissioned an independent laboratory to test the Product. SAC ¶ 45. The laboratory analyzed the fatty acid profiles of multiple samples of the Product and compared the fatty acid profiles to fatty acid "fingerprints" of avocado oil. *Id.* ¶ 46. The laboratory concluded that the fatty acid profiles for the Product tested did not conform to the "fingerprint" for avocado oil. *Id.* ¶ 47.

Smith's counsel also retained Dr. John W. Finley, a food scientist who has worked in the

---

[2] Each food oil contains different proportions of various fatty acids. SAC ¶ 34. The proportions are expressed in the form of ranges, which create a "fingerprint" identity of reference ranges unique to each oil. *Id.* In November 2024, the unique "fingerprint" of avocado oil was codified in the Codex Alimentarius, a collection of internationally adopted food standards. *Id.* ¶¶ 36-38, 41.

field of food oils and fatty acid analysis for decades. *Id.* ¶ 48. Dr. Finley compared the "fingerprint" for avocado oil with the fatty acid profiles of the Product samples tested by the laboratory. *Id.* ¶ 52. He found that the fatty acid profile of the Product did not match the "fingerprint" corresponding to avocado oil. *Id.* ¶ 54. Thus, he concluded that the Product "contain[s] significant quantities of other oil or oils that render the Products adulterated." Declaration of John W. Finley, Dkt. No. 37-1 at 6 ("Finley Decl.").

Smith filed suit against Safeway on October 8, 2024. Dkt. No. 1-2. On March 5, 2025, Smith filed an amended complaint. Dkt. No. 21. On August 22, 2025, the Court granted Safeway's motion to dismiss Smith's amended complaint with leave to amend. Dkt. No. 33. The Court held that Smith failed to state a claim because the complaint "lacked well-pleaded factual allegations plausibly suggesting the presence of other oils in any bottle of Safeway's avocado oil." *Id.* at 2. On September 19, 2025, Smith filed the instant second amended complaint. Dkt. No. 37. On October 24, 2025, Safeway moved to dismiss the second amended complaint. Dkt. No. 40. On November 21, 2025, Smith filed his response, Dkt. No. 42, and Safeway's reply followed on December 12, 2025, Dkt. No. 44.

### LEGAL STANDARD

To comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) and overcome a Rule 12(b)(6) motion to dismiss, a complaint must contain enough "factual enhancement" to cross "the line between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "[A]llegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). The Court need not accept as true "allegations that contradict matters properly subject to judicial notice," or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quotation and citation omitted). Claims sounding in fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a party to "state with particularity the

United States District Court
Northern District of California

circumstances constituting fraud." Fed. R. Civ. P. 9(b).

**DISCUSSION**

Smith asserts multiple claims against Safeway all premised on its alleged misrepresentation that the Product is "100% Avocado Oil", when it was in fact adulterated with other oils, in violation of state consumer protection laws. *See generally* SAC. Safeway moves to dismiss the entire complaint, arguing that Smith fails to adequately allege falsity (i.e. that the Product contained any other oils), as required for each claim. Dkt. No. 40 at 17. Safeway also argues that Smith's claims sound in fraud and are not pleaded with particularity as required by Rule 9(b). Dkt. No. 40 at 22. The Court first considers whether falsity is sufficiently pleaded and then addresses whether the claims are alleged with the particularity Rule 9(b) demands.

## I. Falsity

Safeway contends that none of Smith's sources plausibly support his claim that the Product is adulterated. For the reasons stated in the Court's August 22, 2025 order, the Court agrees that neither the Washington Post article nor the Study plausibly support Smith's allegations. Dkt. No. 33 at 2-3. However, Smith has amended his complaint to include more detail on the laboratory testing performed and to incorporate Dr. Finley's declaration, who opines that the laboratory testing shows that the Product is adulterated. SAC ¶¶ 43-55. Dr. Finley compared the "fingerprint" for avocado oil with the laboratory test results and found that the Product contained oils besides avocado oil. *Id.* ¶ 55. Specifically, Dr. Finley "noted that the Product contained levels of Palmitic (C16:0) acid, Stearic (C18:0) acid, Behenic (C22:0) acid, and Lignoceric (C24:0) acid that fell outside of the Codex ranges for avocado oil." *Id.* ¶ 54. Dr. Finley's declaration pushes Smith's claims from possible to plausible. Because the Court must accept all well-pleaded factual allegations as true and construe the pleadings in the light most favorable to Smith, *Manzarek*, 519 F.3d at 1031, the Court finds that Smith has adequately pleaded the Product is adulterated.

Safeway urges the Court to find Smith's claims implausible because the Study acknowledged that other factors beyond adulteration could lead to irregular fatty acid testing. Dkt. No. 44 at 6-7. But the Court must draw all reasonable inferences in Smith's favor at this juncture,

4

United States District Court
Northern District of California

and "the existence of alternative explanations is immaterial unless the explanations are 'so likely to be true' as to render the plaintiff's theory implausible." *Golikov v. Walmart Inc.*, No. 2:24-CV-08211-RGK-MAR, 2025 WL 648532, at *4 (C.D. Cal. Feb. 27, 2025) (quoting *Starr v. Baca*, 652 F.3d at 1216).  Safeway does not explain why the Study's alternative explanations are more likely than Dr. Finley's conclusion that the Product is adulterated.  Dkt. No. 44 at 6-7.  Thus, this argument fails.

Safeway also contends that Smith's testing is not sufficiently linked to the Product he purchased because testing was done on a different bottle than the one Smith purchased.  Dkt. No. 44 at 7-8.  But "[c]ourts routinely allow plaintiffs in consumer protection cases to draw reasonable inferences that the particular item they purchased was defective or mislabeled based on tests of other samples."  *Golikov*, 2025 WL 648532, at *3; *see also Dawar v. Sovena USA, Inc.*, No. 24 CV 9106, 2025 WL 2495915, at *1 (N.D. Ill. Aug. 29, 2025) (denying motion to dismiss where "the plaintiffs report they sent samples of the defendant's avocado oil to an independent lab, which tested the oil and concluded it was not pure avocado oil.").  Safeway urges the Court to depart from this practice because the Study found "significant differences in the quality and purity of oil from different lot numbers, even when sourced from the same retailer."  Dkt. No. 40 at 12; Dkt. No. 44 at 8.  But the Court must draw all reasonable inferences in Plaintiff's favor, <u>Brown v. Elec. Arts, Inc.</u>, 724 F.3d 1235, 1247 (9th Cir. 2013), and declines Safeway's invitation to deviate from that standard.

## II.  Rule 9(b)

Safeway further argues that Smith fails to satisfy Rule 9(b) because the complaint does not contain a single factual allegation supporting that other oils exist in the Product, nor any allegations that would render such an inference plausible.  Dkt. No. 40 at 22-23 (citing *Hawkins v. Walmart, Inc.*, 766 F. Supp. 3d 1036, 1043 (E.D. Cal. 2025) and *McConnon v. Kroger Co.*, No. 2:24-CV-02601-SB-E, 2024 WL 3941340 (C.D. Cal. June 21, 2024)).  In *Hawkins*, plaintiff relied on a representation that defendant's avocado oil was "pure." *Id.* at *1043-44.  The *Hawkins* court found plaintiff failed to satisfy Rule 9(b) because plaintiff "provide[d] no allegation as to why the 'fatty acid and sterol profiles' mean that the avocado oil is not pure, no measure for purity, no

allegation as to whether or how any such 'purity' was compromised during the manufacturing or processing process, and no specific facts as to any other oils or ingredients allegedly present in the Avocado Oil." *Id.* at *1044. The same is not true here, where the advertising at issue explicitly states "100% Avocado Oil," SAC ¶ 2, and Smith's complaint incorporates an expert declaration concluding that the Product contained other oils based on fatty acid testing. SAC ¶ 55 (citing Finley Decl. at 6). *McConnon* is distinguishable for the same reason. *See Golikov*, 2025 WL 648532, at *3 (differentiating "pure" representation in *McConnon* and *Hawkins* from explicit representation that plaintiff's product contained only avocado oil).

Safeway further states that Smith failed "to carry his burden under Rule 9(b) because he has not stated with particularity 'how' or 'why' Safeway's avocado oil representation is false or misleading." Dkt. No. 44 at 9. The Court disagrees. Smith repeatedly states that the Product contains oils other than avocado oil (the "how") despite the Product explicitly representing it is "100% Avocado Oil" (the "why"). Thus, Safeway's argument fails, and the Court finds that Smith has adequately pleaded his claims with the particularity required by Rule 9(b).

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Safeway's motion to dismiss. The Court **SETS** a case management conference for 10:00 a.m. on April 16, 2026. The parties **SHALL** submit a joint case management statement no later than noon on April 9, 2026.

**IT IS SO ORDERED.**

Dated: March 9, 2026

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**